**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OAKBERRY SD UTC, LLC, a California limited liability company,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>OAKBERRY ACAI, INC., a Florida corporation; GEORGIOS PUCCETTI FRANGULIS, an individual; OAKBERRY USA LLC, a Delaware limited liability company; RENATO HAIDAR FILHO, an individual; HUGO PANNUNZIO, an individual; OAKBERRY CALIFORNIA LLC, a California limited liability company; JOAO PAULO BIANCHINI, an individual; RAFAEL WELLISCH, an individual; and DOES 1 to 50, inclusive,<br><br>　　　　　Defendants. | Case No.: 3:23-cv-01883-BEN-MSB<br><br>**ORDER DENYING PLAINTIFF OAKBERRY SD UTC, LLC'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br><br>**[ECF No. 4]** |

Plaintiff Oakberry SD UTC, LLC ("Plaintiff") brings this breach of contract suit against the above captioned Defendants. Currently before the Court is Plaintiff's *Ex Parte* Application for a Temporary Restraining Order. ECF No. 4-1. Plaintiff seeks to enjoin Defendants Oakberry Acai, Inc. ("Oakberry Acai") and Georgios Puccetti Frangulis ("Frangulis") from proceeding with arbitration initiated in Miami, Florida. *See generally id.* For the reasons set forth below, the Court **DENIES** Plaintiff's *Ex Parte* Application for a Temporary Restraining Order.

## I. BACKGROUND

On September 11, 2023 Plaintiff filed suit against Defendants in the Superior Court of California, County of San Diego alleging: (1) violation of the California Franchise Investment Law, *see* Cal. Corp. Code sections 31000, *et seq.*; (2) breach of contract; (3) intentional misrepresentation/fraudulent concealment; (4) violation of the California Business & Professions Code, sections 17200, *et seq.*; (5) unjust enrichment; and (6) declaratory relief. ECF No. 1-8. Plaintiff alleges that it entered into a purported Trademark Licensing Agreement ("the Agreement") with Defendants, when in reality, the agreement was for the illegal sale of a franchise business. *Id.* at ¶¶ 16–26. Plaintiff alleges that Defendants failed to make the required disclosures, violating relevant laws. *Id.* at ¶ 26. Plaintiff contends that Defendants unilaterally terminated the Agreement when Plaintiff refused to sign a Franchise Disclosure Document subsequently sent by Defendants. *See id.* at ¶¶ 30–35. Plaintiff contends Defendants thus breached the Trademark Licensing Agreement, causing Plaintiff to incur damages.

Per the parties' briefing, on September 5, 2023—before Plaintiff filed suit but after the parties began informal negotiations—Oakberry Acai and Frangulis initiated arbitration proceedings with the American Arbitration Association's ("AAA") International Centre for Dispute Resolution ("ICDR") in Miami, Florida. ECF No. 5 at 2; ECF No. 4-1 at 8–9. Plaintiff states that arbitration did not officially commence until September 19, 2023. *Id.* Plaintiff asserts it obtained an *ex parte* hearing date in Superior Court to address the arbitration issue, but that the first available date was on October 19, 2023. ECF No. 4-1 at

9.

On October 13, 2023, Defendants removed the case to this Court. ECF No. 1. On October 18, 2023, Defendants filed a Motion to Compel Arbitration and Dismiss or Stay the Action. ECF No. 3. On November 1, 2023, Plaintiff filed the instant *Ex Parte* Application for a Temporary Restraining Order. ECF No. 4-1. On November 2, 2023, Defendants filed an Opposition to Plaintiff's *Ex Parte* Application. ECF No. 5.

## II.   DISCUSSION

To obtain a preliminary injunction, a plaintiff must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of relief; (3) the balance of equities tips in their favor; and (4) their requested relief is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Plaintiff fails to establish irreparable harm.

Plaintiff argues it will suffer irreparable harm without the requested injunctive relief, because "Plaintiff will be forced to expend significant resources defending itself and asserting its counterclaims in an illegitimate arbitration in a venue that is unlawful by statute and legal precedent." ECF No. 4-1 at 17. Plaintiff explains that if it refuses to participate in the Miami arbitration, "the ICDR has expressly stated it would continue the arbitration and that Plaintiff would not be able to assert its counterclaims, would not be able to participate in arbitrator selection, and could have an award rendered against it without any recourse." *Id*. Plaintiff therefore argues that if it continues to participate in the Miamai arbitration, it risks waiving its right to challenge arbitration. *Id*. Defendants counter that Courts have repeatedly rejected Plaintiff's argument, finding the burden of proceeding with arbitration insufficient to constitute irreparable harm. Given the facts of this case, Court agrees with Defendants.

Certain courts have held that forcing a party to proceed with arbitration can constitute irreparable harm. *See, e.g.*, *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (holding that the district court's finding of irreparable harm was not clearly erroneous, where the parties sought to enjoin arbitration); *Aguilera v. Matco*

*Tools Corp.*, No. 319-cv-01576-AJB-AHG, 2020 WL 515908, at *7 (S.D. Cal. Jan. 31, 2020) (holding that plaintiffs would suffer irreparable harm by being forced to litigate actions in an improper forum); *World Grp. Sec. v. Tiu*, No. CV 03-2609 NM SHSX, 2003 WL 26119461, at *7 (C.D. Cal. July 22, 2003) ("[F]orcing Plaintiff to arbitrate would deprive it of its right to choose a forum and result in simultaneous litigation of this dispute in two forums, causing Plaintiff to expend time and incur additional legal expenses for which it has no adequate remedy at law."). However, there is another line of cases holding otherwise. *See, e.g.*, *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990) ("The district court's principal error lies in its assumption that unnecessarily undergoing arbitration proceedings constitutes irreparable injury. That is simply not the case. First, the party objecting to arbitration might well suffer no harm at all, irreparable or otherwise, for the arbitration panel might decide in its favor."); *Stanchart Sec. Int'l, Inc. v. Gavaldon*, No. 12-cv-02522-LAB-MDD, 2012 WL 5471933, at *2 (S.D. Cal. Nov. 9, 2012) (explaining that because any arbitration award on non-arbitrable issues may be vacated, the plaintiffs would suffer no irreparable loss if arbitration proceeds).

Given the context of this case in particular, the record does not support a finding of irreparable harm. First, there is already a Motion to Compel Arbitration before the Court. The hearing date for that motion is November 27, 2023. As such, the question of whether the parties will be compelled to arbitration will be resolved in the near future, and there is no indication that the Miami arbitration will resolve before this Court rules on Defendants' Motion to Compel.[1] Second, delay and even costs associated with proceeding in arbitration, alone, are not enough to constitute irreparable harm. *In re Cintas Corp. Overtime Pay Arb. Litig.*, No. C 06-1781 SBA, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009) ("[A]ny additional cost resulting from the Respondents' involvement in the pending arbitration, as a matter of law, does not constitute irreparable harm."); *cf. Andrade*

---

[1]   It also appears that the ICDR provided a ten-day extension of pending deadlines in the arbitration proceedings after being notified of Defendants' Motion to Compel Arbitration. ECF No. 4-1 at 9.

*v. P.F. Chang's China Bistro, Inc.*, No. 12-cv-02724 JLS-MDD, 2016 WL 4098210, at *3 (S.D. Cal. Aug. 2, 2016) (citing *In re Sussex*, 781 F.3d 1065, 1075 (9th Cir. 2015) (explaining that cost and delay alone do not amount to irreparable injury in the context of a request to review a non-final decision arbitration decision)).

Third, Plaintiff's argument that its rights will be waived is unpersuasive, because Plaintiff is actively asserting its position that arbitration should not be compelled, in addition to contesting the location of the ongoing arbitration proceedings. And in the unlikely event that the arbitrator renders a decision prior to this Court resolving Defendants' Motion to Compel Arbitration, there is no indication that Plaintiff is likely to obtain an unfavorable result. If this Court finds that non-arbitrable issues are decided adversely to Plaintiff in arbitration, Plaintiff has recourse to vacate the decision. *See Camping Const.*, 915 F.2d at 1349 ("[A]ny arbitral award obtained by the party seeking arbitration will have no preclusive effect in a subsequent confirmation or *vacatur* proceeding as long as the objecting party has reserved its right to a judicial, rather than arbitral, determination of arbitrability."); *Stanchart Sec. Int'l*, No. 12-cv-02522-LAB-MDD, 2012 WL 5471933, at *2 (citing *Textile Unlimited*, 240 F.3d at 786) ("If it turns out that the award improperly decides non-arbitrable issues and is adverse to Plaintiffs, they have an adequate remedy at law, *i.e.*, they may have it vacated. Thus, it does not appear Plaintiffs would suffer irreparable loss if the arbitration proceeds."). However, seeing that arbitration proceedings commenced in late September 2023, a decision from this Court will likely be rendered prior to any final decision in arbitration. As stated in Plaintiff's briefing, ICDR communicated that proceedings will continue absent a court order, meaning this Court's decision on Defendants' Motion to Compel Arbitration could halt proceedings.[2] *See* ECF No. 4-1 at 8.

---

[2]    Because the Court is denying Plaintiff's *Ex Parte* Application based on a lack of irreparable harm, it does not entertain whether its order arbitration will be binding on arbitration proceedings occurring in Miami, Florida. If necessary, the issue will be addressed when resolving Defendants' Motion to Compel Arbitration.

Fourth, the Court notes that the case was removed to federal court on October 13, 2023 and that Plaintiff waited until November 2, 2023 to file its Motion for Temporary Restraining Order—over two weeks after Defendants filed their Motion to Compel Arbitration, on October 18, 2023. The Court thus questions the imminence of the supposed harm, given Plaintiff's delay in bringing the issue to this Court's attention. "The Ninth Circuit has held that delays in seeking relief should be considered when determining whether preliminary injunctive relief should be granted." *Stanchart Sec. Int'l*, No. 12-cv-02522-LAB-MDD, 2012 WL 5286952, at *2 (citing *Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir.1993); *Lydo Enterprises v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.1984). The record before the Court provides no reason justifying Plaintiff's delay in filing its *Ex Parte* Application.[3]

Finally, although the Court makes no express findings as to whether Plaintiff is likely to succeed on the merits, it does note that an arbitration clause is present in the relevant Trademark Licensing Agreement. Although Plaintiff argues the arbitration provision is not enforceable, on its face, the Court cannot determine exactly how the Agreement should be interpreted without fully developing the record. The parties assert complex, competing arguments as to whether and where arbitration could be compelled, as well as the law to be applied. Furthermore, the parties point to no provision in the Agreement stating where exactly any potential arbitration should occur. As such, this case is distinguishable from *Textile Unlimited*—the one Ninth Circuit decision affirming a finding of irreparable harm if plaintiffs were forced to proceed in arbitration. There, the arbitration provision was included in supplemental terms that one party never agreed to. *See Textile Unlimited*, 240

---

[3]  It appears the parties began negotiating a potential stipulation to arbitrate (initiated by Defendants) on October 25, 2023. ECF No. 4-1 at 10. These negotiations fell through around October 30, 2023, and Plaintiff advised Defendants that it would request a temporary restraining order. *Id.* However, the case was removed to federal court on October 13, 2023, and Defendants Motion to Compel Arbitration was filed on October 18, 2023. Plaintiff does not state why it waited to file its *Ex Parte* Application and the Court will not speculate further.

F.3d at 788. Here, Plaintiff admits to entering the Trademark Licensing Agreement—which contains the arbitration clause at issue—but argues it is unenforceable for other reasons. Based on these facts, *Textile Unlimited* is not applicable for purposes of Plaintiff's *Ex Parte* Application.

For the reasons set forth above, the Court holds that Plaintiff has not established that it is likely to suffer irreparable harm absent a temporary restraining order. Irreparable harm is required to obtain such relief. *See Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249–50 (9th Cir. 2013). Because the Court finds no irreparable harm, it need not address the other factors and requirements necessary to obtain a temporary restraining order. *See id.* at 1251 ("In light of our determination that the record fails to support a finding of likely irreparable harm, we need not address the balance of equities and public interest factors."); *Stanchart Sec. Int'l*, No. 12-cv-02522-LAB-MDD, 2012 WL 5286952, at *3 ("The Court therefore holds that the 'irreparable harm' requirement is not met. The Court need not analyze all the other *Winter* factors because it is clear Plaintiffs cannot satisfy this test.").

### III.  CONCLUSION

As set forth above, Plaintiff's *Ex Parte* Application for a Temporary Restraining Order is **DENIED**.

**IT IS SO ORDERED.**

DATED:   November 13, 2023

**HON. ROGER T. BENITEZ**
United States District Judge