UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKBERRY SD UTC, LLC, a California limited liability company, Plaintiff, v. OAKBERRY ACAI, INC., a Florida corporation; GEORGIOS PUCCETTI FRANGULIS, an individual; OAKBERRY USA LLC, a Delaware limited liability company; RENATO HAIDAR FILHO, an individual; HUGO PANNUNZIO, an individual; OAKBERRY CALIFORNIA LLC, a California limited liability company; JOAO PAULO BIANCHINI, an individual; and RAFAEL WELLISCH, an individual, Defendants. | Case No.: 23cv1883-BEN (MSB) **ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING THE CASE** **[ECF No. 3]** |

I.      **INTRODUCTION**

Plaintiff Oakberry SD UTC, LLC brings this breach of contract suit against the above captioned Defendants.  Currently before the Court is Defendants' Motion to Compel Arbitration and Dismiss or Stay Action.  After considering the papers submitted

-1-

and applicable law, the Court stays the case and compels arbitration between the contract signatories to take place in the Southern District of California.

## II.   **BACKGROUND**

On August 26, 2021, a written contract was signed between Oakberry SD UTC, LLC (Plaintiff) and Oakberry Acai Inc (Defendant) and Georgios Puccetti Frangulis (Defendant).  Among other things, the contract was framed as an agreement whereby Plaintiff would "license" the Oakberry trademark and other operational and intellectual property from the Defendants.  Within two years there was a falling out.

On September 11, 2023 Plaintiff filed suit against Defendants in the Superior Court of California, County of San Diego alleging: (1) violation of the California Franchise Investment Law, Cal. Corp. Code sections 31000, *et seq.*; (2) breach of contract; (3) intentional misrepresentation/fraudulent concealment; (4) violation of the California Business & Professions Code, sections 17200, *et seq.*; (5) unjust enrichment; and (6) declaratory relief.

Plaintiff generally alleges that it intended to enter into a trademark licensing agreement with Defendants, when in reality, the contract was a franchising agreement between businesses.  Plaintiff alleges that Defendants failed to make certain franchising business disclosures, required by the relevant California state laws.  Plaintiff contends that Defendants unilaterally terminated the original trademark licensing agreement when Plaintiff refused to sign a new franchise disclosure document.  Plaintiff contends Defendants thus breached the trademark licensing agreement, causing Plaintiff to incur damages.

Before Plaintiff filed suit in San Diego, California, Defendants Oakberry Acai and Frangulis initiated arbitration proceedings with the American Arbitration Association's International Centre for Dispute Resolution ("ICDR") in Miami, Florida.  Once the California state court case was filed, Defendants removed the case to this Court. Thereafter, Defendants filed a Motion to Compel Arbitration and Dismiss or Stay the Action.

### III.  <u>LEGAL STANDARD</u>

As a preliminary matter, federal substantive law governs the scope of an arbitration agreement and favors arbitration.  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1131 (9th Cir. 2000).  State contract law, on the other hand, usually governs issues pertaining to the validity, revocability, and enforceability of an agreement to arbitrate.  *See, e.g.*, *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716–17 (9th Cir. 2020) (applying California contract law to a wireless services agreement because the agreement's choice-of-law provision states that the contract is governed by the law of the state in which the customer's billing address is located, and the customer resided in California).

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract."  9 U.S.C. § 2.  The FAA provides that once a defendant files a motion to compel arbitration, a district court must "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not" at issue, must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

"The Federal Arbitration Act 'reflects the fundamental principle that arbitration is a matter of contract.' As a result, arbitration agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' If a court is 'satisfied that the making of the agreement for arbitration ... is not in issue,' it must send the dispute to an arbitrator.'" *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192–93 (2024) (citations omitted).  The Supreme Court's recent *Coinbase* decision explains that courts should not assume that the parties agreed to arbitrate

-3-

arbitrability but should look for clear evidence. *Id.* "'Before referring a dispute to an arbitrator,' therefore, 'the court determines whether a valid arbitration agreement exists.'" *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). In this case, Defendants contend that the trademark licensing agreement is not a domestic agreement but an international commercial agreement and therefore subject to an international convention for arbitration.

Similar to the FAA, the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") governs arbitration provisions in *international* commercial agreements. *See Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000) (citing 9 U.S.C. § 201). "The Convention must be enforced according to its terms pursuant to the enabling legislation adopted by Congress—Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208, and any provisions of Chapter 1 of the FAA, 9 U.S.C. §§ 1 *et seq.*, which do not conflict with the Convention, *see* 9 U.S.C. § 208." *Chloe Z Fishing*, 109 F. Supp. 2d at 1241 (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140 (5th Cir.1985)).

"When a party in a suit subject to the Convention moves to compel arbitration under 9 U.S.C. § 206, 'the substantive provisions of Chapter 2 of the FAA direct a court to perform a two-step analysis before referring the dispute to arbitration.'" *Mullen Techs., Inc. v. Qiantu Motor (Suzhou) LTD.*, No. 3:19-cv-1979-W-AHG, 2020 WL 3573371, at *3 (S.D. Cal. July 1, 2020) (quoting *Chloe Z Fishing Co., Inc.*, 109 F. Supp. 2d at 1241). The Convention "provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the convention: (1) an action to compel arbitration… and (2) at a later stage, an action to confirm an arbitral award[.]" *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1263 (11th Cir. 2011) (internal citation omitted). When considering a motion to enforce an arbitration clause pursuant to an agreement covered by the Convention, a court "shall… refer the parties to arbitration unless it finds that the said agreement is null and void, inoperative or incapable of being

-4-

performed." *Id.* (citing Convention, art. II(3)) (emphasis added); s*ee also Bautista v. Star Cruises*, 396 F.3d 1289, 1301 (11th Cir. 2005).

## IV.   DISCUSSION

### A. Whether the Trademark Licensing Agreement is an International Contract under the Convention

"In deciding whether the parties entered an arbitration agreement falling under the Convention, courts consider four questions: (1) is there a written agreement to arbitrate; (2) is the agreement commercial in nature; (3) does the agreement designate a country that is a signatory to the Convention; and (4) is a party to the agreement a foreign citizen or entity." *Mullen Techs., Inc.*, 2020 WL 3573371, at *3 (citing *Chloe Z Fishing Co., Inc.*, 109 F. Supp. 2d at 1243). The trademark licensing agreement meets all four of these tests.

The parties do not appear to dispute that the trademark licensing agreement and Section 11 of that agreement is in writing, that the agreement is commercial in nature, or that the agreement provides for arbitration in the territory of a signatory of the Convention.[1] *See* Defs. Mot. to Compel, Dkt 3-4, Ex. A at 38–40. Rather, the primary dispute is whether Defendant Frangulis, a signer and party to the agreement, is an American citizen or a citizen of Brazil. If Frangulis is a citizen of Brazil, Plaintiff contends that there is a question whether Plaintiff was aware of that at the time of entering into the arbitration agreement.

Frangulis declares that he "is a Brazilian citizen domiciled in Brazil." *Id.* at 14. Plaintiff counters that it "understood Defendant Frangulis to reside in the United States," and "at all relevant times, the corporate filings of Defendant Oakberry Acai, Inc., with the State of Florida indicated Defendant Frangulis was the registered agent of Oakberry Acai, Inc, and since 2016 provided for a local Miami, Florida, residential address." Review of the contract indicates that Frangulis was referred to as "Brazilian" and "**Licensor Brazil**"

---

[1] In this case, the United States of America.

(emphasis in original) on the first page of the agreement and that he is domiciled in Sao Paulo as well as being registered with a Brazilian Taxpayer's ID.  Thus, the agreement contains indicia which tends to undermine Plaintiff's argument that it was unaware of Franguilis's Brazilian citizenship.

With respect to whether the agreement bears a reasonable relationship to Brazil, Defendants make several arguments, including: (1) that some of the trademarks owned by Frangulis (and licensed to Plaintiff) are registered in Brazil; (2) that "Frangulis developed the "Know How" in Brazil; (3) that "[t]he acai products that are the subject of the agreement were made in and shipped from Brazil;" (4) that acai are fruits native to Brazil; (5) that the agreement contemplated Plaintiff sending payments to Brazil; and (6) that the agreement is drafted in Portuguese and English.   Plaintiff, on the other hand, contends that it "never paid a single penny to any person or entity in Brazil" and rather, was instructed "to make any and all payments, including 'royalty' payments, to an entity referred to as 'Oak Brothers' in California."  Plaintiff argues that payments never crossed state lines, let alone international borders.  Plaintiff then argues that the agreement is not an international contract, because "nowhere does the over-two-hundred-pages-long FDD reference either [Frangulis or Oakberry Acai, Inc.] as being Brazilian."  Plaintiff further argues that a latter proposed contract neither implicitly or explicitly states that it is an international contract.  *Id.*  Plaintiff then delves into statements made by Frangulis regarding the United States being a key market and Oakberry's largest, among other comments.  Finally, Plaintiff stands on the merits of the litigation, arguing that the trademark licensing agreement is in essence, an illegal and domestic franchise agreement.

As an initial matter, the focus of the judicial inquiry is on the arbitration agreement contained in the 2021 written agreement.  In the agreement at issue here, there are multiple references to Frangulis' Brazilian connections.  The agreement states that Frangulis is the sole and exclusive holder of the rights to certain trademarks, "which are the subject of registration applications in various international classes in Brazil."  Those trademarks are referred to as "Trademarks Brazil" throughout the agreement.  Plaintiff's

-6-

argument that it never made payments to Brazil is also weakened by the presence of clause 4.7 of the agreement.  In this clause, Frangulis guarantees and declares the responsibility for registering the Agreement "with the National Institute of Industrial Property - INPI and Banco Central do Brasil, for the purpose of receiving remuneration abroad."  Even if, as Plaintiff alleges, it did not make payments to Brazil, this language shows the licensing agreement contemplated that payments could be made abroad.

There are also several references to Brazilian law.  For example, under the Judicial Procedures and General Provisions sections, the agreement refers to the Brazilian Civil Procedure Code and Brazilian Civil Code multiple times.  The agreement also contains a Governing Law provision that clearly states: "This Agreement shall be governed and interpreted in accordance with Brazilian law, regardless of where its effects take place and/or where it is performed."  Finally, the important arbitration language provides "that, for purposes and effects of article 806 of the Brazilian Civil Procedure Code, the request for the initiation of the arbitration procedure will be equivalent to the filing of a lawsuit with the same purpose."  This provision is telling because it is contained in the Conflict Resolution section, Section 11, which, in turn, outlines the agreement to arbitrate disputes.

Given the text, including the arbitration agreement, the Court finds the commercial relationship of the parties has a reasonable relation to Brazil.  The governing law as set forth is Brazilian law, and Brazilian law is cited in outlining the initiation of arbitration. Plaintiff's arguments do not overcome the text of the 2021 trademark licensing agreement.  Because the other elements are not disputed and the agreement bears a reasonable relation to Brazil, the Court holds/finds the agreement is subject to the Convention.

**B. The Arbitration Provision Is Not Null and Void**

In this case, the agreement to arbitrate is neither null and void, nor inoperative, nor incapable of being performed.  *Lindo*, 652 F.3d at 1263 (internal citation omitted).  The salient parts of the agreement to arbitrate disagreements are found in Section 11.  Section

-7-

11.1 says, "Any disputes or disputes arising out of this Agreement shall be submitted to the Mediation and Arbitration Chamber of American Arbitration Association, and the unsuccessful Party shall bear all costs inherent to the arbitration proceedings, including any fees and any attorneys' fees involved."  Section 11.2.6 says,  "The arbitral tribunal shall have exclusive jurisdiction to discuss the merits of matters involving this Memorandum and the provisions contained therein . . . ."

To implement the Convention, the "Convention Act provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the New York Convention: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015) (emphasis removed). "These two stages of enforcement are known as (1) the arbitration-enforcement stage and (2) the award-enforcement stage.  Only certain defenses can be raised at each stage of enforcement, and the available defenses differ between the arbitration-enforcement stage and the award-enforcement stage." *Escobar, 805 F.3d at 1286* (internal citation omitted).

At the present arbitration-enforcement stage, the only defenses to arbitration are that the arbitration agreement is "null and void, inoperative or incapable of being performed." *Id.* "The null-and-void clause encompasses only those defenses grounded in standard breach-of-contract defenses—such as fraud, mistake, duress, and waiver—that can be applied neutrally before international tribunals." *Id.*  Defenses that the arbitration agreement is unconscionable or that public policy defeats the agreement are premature and not available at this setting.  *Id.* at 1287-88; *Isanto v. Royal Caribbean Cruises, Ltd.,* 497 F. Supp. 3d 1237, 1249 (S.D. Fla. 2020).

**C. The Arbitration Provision**

Resisting arbitration, Plaintiff argues that the Defendants fraudulently induced Plaintiff to enter into the trademark licensing agreement by misrepresenting the true nature of the agreement in order to avoid compliance with California franchise laws.

-8-

Plaintiff, however, does not argue that it was fraudulently induced to agree to the arbitration provision.  As to whether the entire agreement was just a trademark licensing agreement or something different (like a misrepresented franchising agreement that would violate state law) is a subject for the arbitrator to decide.  Plaintiff further argues that because the Defendants did not comply with the California Franchise Investment Law or provide Plaintiff with an FTC mandated franchise disclosures document within the specified time period, the sale of the franchise was unlawful.  Again, these questions are for the arbitrator to decide.  Finally, Plaintiff argues that § 31300 of the California Corporations Code allows a party to rescind a franchise agreement if the franchisor commits willful violations, and that Defendants violation was willful because they failed to register or file a notice of exception.  For these reasons, Plaintiff contends it can rescind the agreement because it is illegal, null and void.  None of these asserted defenses undercut the arbitration agreement to the point of being incapable of being performed or inoperative.  Instead, the face of the trademark licensing agreement suggests that it a garden variety commercial agreement by businesses with the mutual goal of selling products for profit.  Consequently, Plaintiff has not carried its burden of demonstrating any of those defenses grounded in standard breach-of-contract defenses that can be applied neutrally before international tribunals at the arbitration enforcement stage.

Plaintiff remonstrates that the arbitration agreement is unconscionable and should not be enforced.  But a defense of unconscionability or that public policy defeats the agreement is premature and not available at this first stage.  *Escobar*, 805 F.3d 1279, 1287.  Even if Plaintiff could raise a defense of unconscionability at this stage it would not carry the day.  In California, a contract must be both procedurally and substantively unconscionable to be invalid.  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).  The procedural component focuses on surprise or unequal bargaining power.  *Armendariz v. Fdn. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  The substantive component looks at overly harsh or one-sided results.  *Id.*  Both procedural and substantive unconscionability must be present in order for a court to refuse to enforce

23cv1883-BEN (MSB)

a contract under the doctrine of unconscionability. *Stirlen v. Supercuts*, 51 Cal. App. 4th 1519, 1533 (1997); *Cristo v. Charles Schwab Corp.*, No. 17-CV-1843-GPC-MDD, 2018 WL 1737544, at *5 (S.D. Cal. Apr. 11, 2018). The California Supreme Court has emphasized that "'unconscionability requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016). And the party opposing arbitration bears the burden to demonstrate unconscionability. *Sonic–Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (2013).

Here, there is no indicia of an unconscionable agreement to arbitrate. There is little evidence that the arbitration agreement was entered into by mistake or because of fraud or duress.

**D. Arbitration is Compelled Within This District**

The agreement specifies that arbitration shall proceed before the American Arbitration Association. However, it does not specify that it be conducted in California or Florida. It does not specify any location, signifying that the parties intended to leave the location open. In the absence of a term specifying the location for arbitration, as is the case here, a district court can only order arbitration within its district. *Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.,* 819 F.2d 247, 250-51 (9th Cir. 1987) ("In the absence of a term specifying location, a district court can only order arbitration within its district."). Therefore, arbitration before the American Arbitration Association is ordered to take place within the Southern District of California.

**E. Plaintiff is Not Compelled to Arbitrate with Non-Signatory Defendants**

Plaintiff objects to being compelled to arbitrate with non-signatory Defendants. Only the parties to the trademark licensing agreement, which are Oakberry SD UTC, LLC (Plaintiff) on the one hand, and Oakberry Acai Inc. (Defendant) and Georgios Puccetti Frangulis (Defendant) on the other hand, signed the agreement with the arbitration clause and only these parties are compelled to arbitrate. Plaintiff's case with respect to the additional Defendants will be stayed until the conclusion of arbitration proceedings.

-10-

## F. Plaintiff's Inability to Pay Arbitration Fees

The arbitration agreement requires the parties to equally share the costs and fees of arbitration.  If Plaintiff prevails in arbitration, the agreement permits it to recover all reasonable costs and expenses including attorneys' fees.  Plaintiff says it lacks resources to afford arbitration, however, Plaintiff has not shown how the potential costs of arbitration are higher than the costs of litigating the case in federal court.  Nor has Plaintiff presented evidence of net worth; rather, it offers evidence only of monthly cash flows and annual incomes.  It is not enough to persuade the Court that the fee-splitting provision is "so one-sided as to 'shock the conscience.'"  *Cristo*, 2018 WL 1737544, at *7; *cf. Wolf v. Langemeier*, No. 2:09-CV-03086-GEBEFB, 2010 WL 3341823, at *7 (E.D. Cal. Aug. 24, 2010).

## V.   CONCLUSION

Defendants' Motion to Compel Arbitration is **GRANTED**.  The signatory parties are directed to arbitrate their disagreements before the American Arbitration Association and to do so within the Southern District of California.  This litigation is **STAYED** pending a decision in arbitration.  Parties are further **ORDERED** to file a joint status update with the Court every sixty (60) days and no later than five (5) days after arbitration is complete.  This stay shall expire January 31, 2025.

**IT IS SO ORDERED.**

DATED:    July 18, 2024

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-11-

23cv1883-BEN (MSB)