# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKBERRY SD UTC, LLC, a California limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>OAKBERRY ACAI, INC., a Florida corporation; GEORGIOS PUCCETTI FRANGULIS, an individual; OAKBERRY USA LLC, a Delaware limited liability company; RENATO HAIDAR FILHO, an individual; HUGO PANNUNZIO, an individual; OAKBERRY CALIFORNIA LLC, a California limited liability company; JOAO PAULO BIANCHINI, an individual; and RAFAEL WELLISCH, an individual,<br><br>  Defendants. | Case No.: 23cv1883-BEN (MSB)<br><br>**ORDER GRANTING MOTION TO REMAND ACTION TO STATE COURT** |

## I.   INTRODUCTION

Plaintiff Oakberry SD UTC, LLC brings this breach of contract suit against the above captioned Defendants.  The Court previously stayed this action after compelling

the parties to arbitrate their dispute. Afterwards, the parties engaged in arbitration proceedings with the American Arbitration Association's International Centre for Dispute Resolution ("ICDR"). The parties have returned after the ICDR terminated the proceedings. Currently before the Court is Plaintiff's Motion to Remand Action to State Court. After considering the papers submitted and applicable law, the Court GRANTS the Motion.

## II.   BACKGROUND

On August 26, 2021, a written contract was signed between Oakberry SD UTC, LLC (Plaintiff) and Oakberry Acai Inc (Defendant) and Georgios Puccetti Frangulis (Defendant). Among other things, the contract was framed as an agreement whereby Plaintiff would "license" the Oakberry trademark and other operational and intellectual property from the Defendants for the purposes of maintaining a single acai stand within a shopping center. Within two years there was a falling out.

On September 11, 2023, Plaintiff filed suit against Defendants in the Superior Court of California, County of San Diego alleging: (1) violation of the California Franchise Investment Law, California Corporation Code sections 31000, *et seq.*; (2) breach of contract; (3) intentional misrepresentation/fraudulent concealment; (4) violation of the California Business & Professions Code, sections 17200, *et seq.*; (5) unjust enrichment; and (6) declaratory relief.

Plaintiff generally alleges that it intended to enter into a trademark licensing agreement with Defendants, when in reality, the contract was a franchising agreement between businesses. Plaintiff alleges that Defendants failed to make certain franchising business disclosures, required by the relevant California state laws. Plaintiff contends that Defendants unilaterally terminated the original trademark licensing agreement when Plaintiff refused to sign a new franchise disclosure document. Plaintiff contends Defendants thus breached the trademark licensing agreement, causing Plaintiff to incur damages.

Before Plaintiff filed suit in San Diego, California, Defendants Oakberry Acai and

Frangulis initiated arbitration proceedings with the ICDR in Miami, Florida. Once the California state court case was filed, Defendants removed the case to this Court. Thereafter, Defendants filed a Motion to Compel Arbitration and Dismiss or Stay the Action. This Court granted Defendants' Motion to Compel Arbitration and the litigation was stayed pending a decision in arbitration.

A second arbitration was initiated before the ICDR, in San Diego, California. At the onset of arbitration, Plaintiff's counsel informed the Tribunal that Plaintiff was unable to pay the $6,600 filing fee. An email exchange ensued between Plaintiff's counsel, Defendants' counsel, and the ICDR Vice President, addressing Plaintiff's failure to pay the arbitration filing fee. Therein, the ICDR Vice President advised Plaintiff's counsel of cost-saving measures that could reduce Plaintiff's arbitration costs generally, including filing a waiver for the filing fee, reducing the size of the Tribunal to a single arbitrator, finding a pro-bono arbitrator, presenting the case on documents only, or limiting the arbitrators' hourly rate.

In an email exchange, months later, between Plaintiff's counsel and the Director of ICDR, the Director of ICDR informed Plaintiff's counsel that Plaintiff's counterclaim would be dismissed for not paying the $6,600 filing fee. Plaintiff then paid the filing fee. A procedural hearing was held before the Tribunal where the arbitration process was laid out, and the parties presented their claims and defenses. There, Plaintiff objected to arbitral jurisdiction, mainly the existence and validity or the arbitration agreement and the arbitrability of the claims. The parties stipulated to delegate all jurisdictional questions to the Arbitrators. However, the Arbitrators did not rule on the jurisdictional questions because Plaintiff next failed to pay its first deposit. Plaintiff then asked the Tribunal to ask Defendants to cover Plaintiff's arbitrator's fees. The Tribunal asked Defendants and Defendants chose not to.

Shortly thereafter, the Tribunal suspended the arbitration for thirty (30) days in accordance with Article 39(5) of the ICDR Procedures. The Tribunal informed the parties that the arbitration would terminate in accordance with Article 39(5) if payment

was not received.  On January 25, 2025, the arbitration was terminated by the Tribunal in accordance with Article 39(5) of the ICDR Procedures.

## III. LEGAL STANDARD

A motion to remand challenges the removal of an action.  <u>Moore-Thomas v. Alaska Airlines, Inc.</u>, 553 F.3d 1241, 1244 (9th Cir. 2009).  Generally, a state civil action may be removed only if, at the time of its removal, it is one that initially could have been brought in federal court.  <u>See</u> 28 U.S.C. § 1441(a).  Any doubt about removal is to be resolved in favor of remand because federal courts are ones of limited jurisdiction, and the removal statute is strictly construed.  <u>Moore-Thomas</u>, 553 F.3d at 1244 (citing <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992)).  The removing defendant must overcome the "strong presumption against removal jurisdiction" and establish that removal is proper.  <u>Hunter v. Phillip Morris USA</u>, 582 F.3d 1039, 1042 (quoting <u>Gaus</u>, 980 F.2d at 566.

## IV. DISCUSSION

### A. Arbitration

The parties entered into an international commercial agreement.  <u>See</u> Doc. No. 1-9 at 361.  The agreement falls under The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), pursuant to Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208.  <u>See</u> Doc. No. 10 at 4, ¶7-19.  The FAA governs the enforceability of arbitration agreements in contracts.  Similar to the FAA the Convention governs arbitration provisions in *international* commercial agreements.  <u>Mullis v. J.P. Morgan Chase & Co.</u>, No. 3:24-cv-1334-JES-MSB, 2025 WL 1532877, at *3 (S.D. Cal. May 29, 2025) (citations omitted).  The court's role in addressing a question of arbitrability generally is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue."  <u>Chiron Corp. v. Ortho Diagnostic Sys. Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted).  If the court finds that both requirements are met, the FAA requires it to enforce the provision in accordance with its terms.  <u>Id</u>.  However, the

-4-

requirements of Sections 3 and 4 of the FAA that act as parallel devices for enforcing an arbitration agreement must also be met. See 9 U.S.C. §§ 3-4.

The parties were ordered by this Court to arbitrate. Doc. No. 10. The arbitration terminated before a decision on the merits was reached after which the parties returned to this Court. See Doc. No. 16. Plaintiff contends arbitration "has been had" pursuant to Section 3 of the FAA. See Doc. No. 16 at 8 ¶14. Defendants contend Plaintiff "failed, neglected, or refused" to arbitrate under Section 4 of the FAA. See Doc. No. 17 at 6 ¶19. Considering the interaction between Sections 3 and 4 of the FAA is critical in determining whether the parties abided by this Court's order to arbitrate.[1]

Here, there is no dispute that an arbitration agreement exists, that it is enforceable and binds the parties, and that it encompasses the underlying dispute. The question is how Section 4 applies in the scenario where arbitration was initiated, but the proceeding was terminated before a final decision due to nonpayment of arbitration fees. Plaintiff contends arbitration "has been had" pursuant to Section 3 of the FAA despite the termination. Defendants contend Plaintiff "failed, neglected, or refused" to arbitrate under Section 4 of the FAA by not paying the required fees or attempting to arrange alternative payments.

First, a determination is made as to whether the Tribunal acted within the scope of its discretion under the parties' arbitration agreement. Second, a determination is made as to whether Plaintiff's conduct during arbitration was carried out in good faith.

I.  Whether Arbitration Has "Been Had"

Generally, the FAA reflects a "fundamental principle that arbitration is a matter of contract." AT & T Mobility LLC v. Conception, 563 U.S. 333, 339 (2011). As such, courts look to the parties' agreement to determine how the parties agreed to proceed with

---

[1] Under Section 3 of the FAA, the court must stay civil proceedings "until such arbitration has been had." 9 U.S.C. § 3. Section 4 of the FAA reads, "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" may "petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

arbitration. See Greco v. Uber Techs., Inc., No. 4:20-cv-02698-YGR, 2020 WL 5628966, at *3 (N.D. Cal. Sept. 3, 2020). The Ninth Circuit has considered whether arbitration has "been had in accordance with the terms of the [arbitration] agreement" where the parties incorporated arbitral rules, and those rules resulted in an arbitration to terminate due to non-payment of arbitration fees.

In Tillman, the Ninth Circuit addressed the meaning of "has been had," as referenced in Section 3 of the FAA. Tillman v. Tillman, 825 F.3d 1069, 1073 (9th Cir. 2016). The court found that parties whose arbitration was terminated due to non-payment of fees "had" arbitration in accordance with the terms. Id. In that case, the arbitration agreement "explicitly incorporated the AAA's rules." Id. Those rules allowed the arbitrator to terminate proceedings without a decision on the merits. Id. The court reasoned that "parties have the right under the FAA to choose the rules under which their arbitration will be conducted," and because the parties "chose rules that allowed the arbitrator to terminate their arbitration in the event of nonpayment," such termination satisfies the parties' agreement. Id. at 1076. The court concluded that because the "steps were followed," the arbitration "had 'been had' pursuant to the agreement." Id.

Like the parties in Tillman who incorporated the AAA's rules, the Parties here also incorporated the AAA rules. Not only were those rules incorporated directly into the contract, but the Parties explicitly stipulated to the use of AAA's ICDR Rules. Doc. No. 16-1 at 3 ¶18-20. The ICDR Rules, like the AAA Rules in Tillman, allowed the arbitrator to terminate proceedings without a decision on the merits. Plaintiff argues that this stipulation supersedes any conflicting provisions in the underlying contract. Defendants argue that the Tribunal had no power to allocate fees "during" the arbitration.

The Parties stipulated to Procedural Order No. 1 from the ICDR, in which section 37 reads "the Arbitrators may fix and allocate costs among the parties in their Final Award." This section supports Plaintiff's contention that the arbitrators had the authority to alter the fees and costs during arbitration, while reserving the right to "fix" and "allocate" fees and costs after arbitration. As a matter of fact, the Arbitrators did just that

when they asked Defendants if they were willing to front Plaintiff's costs. Defendants were aware that, if they prevailed in the arbitration, any costs they advanced on Plaintiff's behalf would be recoverable through the Final Award.

Defendants emphasize the language of the underlying agreement. In their brief, Defendants argue that in the Parties' agreement Section 11.2.3, they "expressly agreed that 'each Party shall bear its own costs during the conduct of the arbitration, including with respect to the fees of the Arbitrator.'" See Doc. No. 17 at 7 ¶3-9. However, Defendants do not include the entire sentence. A complete reading of Section 11.2.3 is, "each party shall bear its own costs during the conduct of the arbitration, including with respect to the fees of the Arbitrators, *in proportion to the arbitration tribunal's determination*." Id. The last part of the sentence provides the Tribunal with authority to alter the "costs during the conduct of the arbitration" pursuant to the Parties own agreement.

It is important to examine how the ICDR concluded this arbitration. According to Procedural Order No. 2 from the ICDR—which addressed the termination—the Tribunal terminated the arbitration pursuant to Rule 39(5). See Doc. No. 16-3, at 7 . Under Rule 39(5), it does not list Plaintiff's failure to pay the arbitration fees as a withdrawal, but instead as a termination of the entire proceeding for "parties" failing to pay arbitration fees. Id.

The Tribunal could have decided that Plaintiff defaulted under Rule 29. Or the Tribunal could have terminated the arbitration under Rule 39(3), which reads: "Failure of a party asserting a claim or counterclaim to pay the required fees or deposits shall be deemed a withdrawal." See Doc. No. 16-3, at 106-110. But the Tribunal did neither. In addition, Defendants requested the Tribunal to continue with arbitration without Plaintiff's counterclaim. The Tribunal rejected their proposal. Instead, the arbitration termination under ICDR Rule 39(5) appears to be based upon Defendants not covering Plaintiff's arbitration fees. For these reasons, the Court finds that arbitration has "been had" pursuant to the Parties agreement and Section 3 of the FAA.

## II. Failure, Neglect, or Refusal

While the arbitration proceeded in conformity with the terms of the Parties' agreement, Plaintiff must also show that he made a good-faith effort to arbitrate.

A party cannot manipulate its way back into court by withholding payments despite its ability to pay. Tillman, 825 F.3d at 1075-76. In such a situation, "the district court probably could … compel arbitration under the FAA's provision allowing such an order in the event of a party's 'failure, neglect, or refusal' to arbitrate." See id. (quoting 9 U.S.C. § 4). The Ninth Circuit considered "failure, neglect, or refusal of another to arbitrate" based on failure to pay arbitration fees in Lifescan, Inc. v. Premier Diabetic Services, Inc., 363 F.3d 1010, 1011 (9th Cir. 2004) ("What happens when a party to an arbitration is unable to pay its pro-rata share of the arbitration fees?").

In Lifescan, the parties began arbitration, but before the final hearing, one party failed to pay their arbitration fees. Id. The arbitrators gave the paying party the option of advancing the fees owed by the non-paying party. Id. The paying party refused, and arbitration was terminated pursuant to the authority granted to the arbitrators via the AAA. Id. The district court held that the nonpaying party's failure to pay amounted to its "failure, neglect, or refusal" to arbitrate and granted the paying party's motion to compel arbitration. The Ninth Circuit reversed.

Plaintiff argues that Lifescan is analogous to the present case because of the procedural steps taken by the arbitrators and the parties' agreement to abide by them. Like the arbitration in Lifescan, which was terminated according to the arbitrators' rules, the arbitrators here terminated the arbitration based on ICDR Rule 39. The paying party in Lifescan declined to cover the nonpaying party's costs, like the Defendants declined to cover the Plaintiff's costs in this arbitration.

To distinguish Lifescan, Defendants claim that Plaintiff insisted on selecting an expensive arbitrator, unlike the plaintiff in Lifescan. However, Defendants offer no factual support for this distinction. The Lifescan opinion does not mention the actual cost of arbitrators.

Nevertheless, Defendants contend that from the very start of the arbitration, Plaintiff took every possible step to "derail" the proceeding. In support, Defendants offer the following three arguments: (1) Plaintiff failed to provide convincing evidence of its inability to pay for arbitration fees, since it was being represented by two law firms and continuing business operations; (2) Plaintiff unnecessarily prolonged the proceedings; and (3) Plaintiff intentionally chose an expensive arbitrator. See Doc. No. 17. Defendants argue that this conduct amounts to a failure, neglect, or refusal to arbitrate. Id.

This Court previously found that Plaintiff did not present sufficient evidence to prove its inability to pay arbitration fees. See Doc. No. 10, at 11 ¶1-11. However, this Court's previous determination was preliminary and does not constrain the Tribunal's procedural autonomy.[2] It may be that Plaintiff did not submit additional evidence to the Tribunal regarding its inability to pay. However, the Tribunal had the authority to request such information—but, as Plaintiff points out, it did not. Instead, the ICDR Vice President advised Plaintiff's counsel of cost-saving measures that could reduce Plaintiff's arbitration costs generally, including seeking a waiver for the filing fee, reducing the size of the Tribunal to a single arbitrator, finding a pro-bono arbitrator, presenting the case on documents only, or limiting the arbitrators' hourly rate within a certain range.

Plaintiff accepted the suggestions of ICDR Vice President, stating that a fee waiver had been submitted, that it was willing to proceed with a single arbitrator, and that it had attempted to find a pro bono arbitrator. Although it was unable to secure a pro bono arbitrator, Plaintiff eventually paid the filing fee. It was not until after discovering that the arbitrator's fees would likely exceed $140,000 that Plaintiff failed to make further payments.

Next, Defendants argue that Plaintiff prolonged the arbitration proceedings in an

---

[2] The FAA "leaves no place for the exercise of discretion by a district court but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as which the arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)

effort to increase costs. Specifically, Defendants claim that Plaintiff "insisted on additional preliminary briefing regarding the arbitrators' jurisdiction," repeating arguments previously raised before this Court. However, according to the arbitration schedule, these preliminary hearings addressed legitimate concerns raised by Plaintiff—such as the applicable choice of law and the selection of the arbitrator. These issues were reasonable and appropriate to raise and cannot be characterized as mere "tactics," as Defendants suggest.

As to the selection of arbitrators, the parties' contentions are heavily intertwined, with each side arguing that they were the ones who elected to have one arbitrator. Plaintiff does admit to challenging Defendant's selection of having a Brazilian arbitrator as the sole arbitrator. Plaintiff offered to use another judge who it believed was "impartial," insinuating that the Brazilian arbitrator would not be impartial because one or more Defendants reside in Brazil. However, the issue of selecting an arbitrator is a reasonable and appropriate issue to raise during the preliminary stage of arbitration; it should not be viewed as an attempt to "derail" the proceedings.

Additionally, Defendants argue that Plaintiff's hiring of two law firms and continued operations without paying royalties indicate sufficient funds to cover arbitration fees. This is not persuasive. According to Plaintiff, the law firms work on a contingency basis, meaning Plaintiff is not paying legal fees out of pocket. Regarding Plaintiff's ongoing business operations, Plaintiff asserts that "a small business can be operational and yet entirely unable to amass an extra $140,000+." Both of Defendants' arguments rest on the assumption that Plaintiff intentionally withheld payment. However, there is no basis for such a conclusion. Plaintiff is not personally funding legal expenses and operates a single acai stand in a mall. Doc. No. 7-1, at 2 ¶1-4.

This Court directed Plaintiff to submit financial documents covering the last two years. Those documents have now been filed under seal and the Court has reviewed these financials. Having reviewed these documents, the Court hereby finds that Plaintiff is unable to pay for its share of the arbitration costs. For these reasons, like the district

court in Tillman that made an express finding that one party was unable to pay for her share of the arbitration, this Court finds that Plaintiff has not "failed, refused, or rejected" to arbitrate due to its inability to pay. 825 F.3d at 1076 ("Here, however, the district court found that Tillman had exhausted her funds and was 'unable to pay for her share of arbitration.'").

### B. Jurisdiction

Having determined that arbitration has been had pursuant to the parties' agreement, but that it did not resolve the claims on its merits, the Court turns to whether it retains jurisdiction to adjudicate the remaining claims. A court has discretion to remand when the basis for federal jurisdiction no longer applies. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1998).

Defendants argue that this Court continues to have original jurisdiction pursuant to "the FAA, and specifically 9 U.S.C. 205." Doc No. 17, at 6. Defendants are correct. This Court retains original jurisdiction. See Day v. Orrick, Herrington & Sutcliffe, LLP, 42 F.4th 1131, 1138 (9th Cir. 2022).[3] However, the purpose of granting federal courts with subject matter jurisdiction under the Convention is to effectuate *recognition* and *enforcement* of arbitration agreements. See 9 U.S.C. 201-208; see also Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 n.6 (2d. Cir. 2011). Recognition and enforcement refer to facilitating the arbitration process necessary to arrive at an arbitration award. Day, 42 F.4th at 1139 (citation modified).

Here, the Parties have already arbitrated in accordance with their agreement. And because the arbitration did not result in a decision on the merits, the arbitration provision no longer has an effect on the outcome of the case. As a result, the Court has no further role in facilitating arbitration which has already been had. Therefore, the federal claim that formed the basis of federal jurisdiction is extinguished. Only supplemental jurisdiction remains with respect to the remaining state law claims -- jurisdiction which

---

[3] Sections 203 and 205 are to be read consistently as conferring subject-matter jurisdiction over actions subject to the Convention.

the Court now declines to assert. See 28 U.S.C. § 1367(c).[4]

When all federal claims are eliminated before trial, "the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims. Acri v. Varian Associates, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'").

Here, the § 1367(c) factors weigh in favor of remand to the state court. First, the Complaint is the only pleading on file. No discovery has been conducted. Plaintiff contends the case will not be ready for trial for at least a year. Second, there is no reason to believe that judicial proceedings would be any less fair in state court than in federal court. Third, the San Diego Superior Court and the United States District Court for the Southern District of California are both located in San Diego. Fourth, as a matter of comity, Plaintiff's claims are state law claims, so the state law should be applied by a California state judge. In totality, the factors weigh in favor of remand to the state court.

Lastly, Defendants argue that this Court has diversity jurisdiction because JP, Wellisch, and Oak Brothers ("CA Defendants") were fraudulently joined. And because they were fraudulently joined, their citizenship should not be considered in any diversity jurisdiction analysis. Defendants base their argument on Plaintiff's Complaint; arguing that "the Complaint does not even allege CA Defendants were in any way involved in the negotiation of the TLA or execution of any franchise agreement or FDD." Doc. No. 17, at 14 ¶20-22. However, the facts as alleged in the Complaint do not support their contention.

---

[4] 28 U.S.C. § 1367(c) provides: The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Plaintiff alleges in its Cause of Action 3 that the CA Defendants were "principals and/or officers of Oak Brothers, developed, formulated, perpetrated, carried out, and/or directed the intentional misrepresentation … to their own finical benefit." Doc. No. 1-8, at 20 ¶92-99. This allegation pertains to when the Defendants, allegedly, "concealed or failed to disclose facts relating to the purpose and effect of the FDD in order to induce Plaintiff to execute the Franchise documents." Id. Not only does the Complaint allege sufficient facts to include the CA Defendants, but the Defendants' own prior assertions contradict themselves. In its Motion to Compel Arbitration, Defendants argued that Plaintiff should be directed to arbitrate with the CA Defendants because the claims were "inextricably intertwined" with those against the other Defendants. Doc. No. 3, at 11.

For these reasons, this Court is not persuaded to retain jurisdiction.

## V.     CONCLUSION

Plaintiff's Motion to Remand Action to State Court is **GRANTED**.

**IT IS SO ORDERED.**

DATED:     October 30, 2025

_____
**HON. ROGER T. BENITEZ**
United States District Judge